[Nos. 86433-1; 86710-1. En Banc.]
Argued June 26, 2012. Decided February 28, 2013.

Steven F. Schroeder, *Petitioner*, v. Excelsior Management Group, LLC, et al., *Respondents*.

Steven F. Schroeder, *Petitioner*, v. Philip J. Haberthur, *as Trustee*, et al., *Respondents*.

*Matthew F. Pfefer*, for petitioner.

*Phillip J. Haberthur* and *Bradley W. Andersen* (of *Schwabe Williamson & Wyatt*); *Dianne K. Rudman* (of *Rudman Law Office PS*); and *Michael H. Church* and *Darren M. Digiacinto* (of *Stamper Rubens PS*), for respondents.

¶1 CHAMBERS, J.[*] — For nonagricultural land, Washington's deed of trust act provides a comparatively inexpensive and fast mechanism for the lending industry to foreclose on property pledged as security for a debt through a nonjudicial foreclosure action. In a nonjudicial foreclosure, a properly appointed trustee is empowered by the act to hold a foreclosure sale without judicial supervision. However, the act does not allow nonjudicial foreclosure of agricultural land. Agricultural land must be foreclosed judicially. RCW 61.24.020, .030(2).

¶2 In 2009, Phillip J. Haberthur (who was both the trustee and the attorney for the lender) nonjudicially foreclosed on Steven Schroeder's property. Schroeder attempted to restrain the sale on the grounds that his land was agricultural and not subject to nonjudicial foreclosure. He has also filed claims for damages. The primary question before the court is whether the parties to a deed of trust may waive the statutory requirement that agricultural land must be foreclosed judicially. We hold agricultural land must be foreclosed judicially based on the plain language of RCW 61.24.030(2). Parties may not waive the statute.

¶3 We must also determine whether the trial court abused its discretion by permitting a trustee to proceed with a nonjudicial sale under the facts of this case without first determining whether the land was agricultural in nature. Although the procedure here was admittedly convoluted, we hold the trial court abused its discretion in failing to restrain the sale without first determining

[*] Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

whether the land was agricultural and also erred in dismissing Schroeder's other claims on summary judgment. We reverse the courts below and remand to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶4 In 1959, the year Schroeder was born, his parents bought a 200 acre farm near the city of Colville, Stevens County, Washington. Schroeder testified by deposition that he has been a farmer on that land all his life. The record suggests he raised cattle and timber. An appraisal obtained on May 30, 2007, and allegedly relied upon by the lender describes the property as 75 percent "Ag and Timberland" and valued at $675,000.[1] Schroeder also contends he provided copies of his tax returns in which he declared his occupation to be "Farm/Logging" and included "Schedule F" "Profit or Loss from Farming" statements. Excelsior Clerk's Papers (ECP) at 13-15.

¶5 Around June 12, 2007, Schroeder borrowed money from Excelsior Management Group LLC, or one of its corporate affiliates, secured by a deed of trust on the 200 acres. It appears he fell behind on the payments, and the next year, a successor trustee began nonjudicial foreclosure proceedings. The notice of trustee's sale said the principle balance was $317,250.00 (and after interest and fees were added, the amount estimated for reinstatement was $385,517.73).

¶6 A longtime attorney for Schroeder rose to his defense, later saying he worked without being paid because he believed that keeping the farm "was very important to Mr. Schroeder." ECP at 157. By April 2009, Schroeder's lawyer and his counterpart negotiated a settlement, struck the

---

[1] The appraisal describes the property as "gently sloping meadows mixed with timberland. There is an average amount of merchantable timber on the property along with 5 springs and 3 ponds. There are 4 barns, 3 sheds, and an older vacant farm house not valued in this appraisal." Excelsior Clerk's Papers at 264.

foreclosure sale, and dismissed the case. While the record is not entirely clear, it suggests Excelsior Management Group LLC, through a corporate partner, "agreed to loan $425,700 to Steven Schroeder" in return for a new deed of trust on the land and an agreement that the property was not agricultural for purposes of nonjudicial foreclosure. ECP at 168. The record is also unclear as to whether Schroeder actually received any money beyond that deemed necessary to refinance the 2007 loan. The new deed of trust names Excelsior Mortgage Equity Fund II LLC as both the lender and the beneficiary, suggesting a close relationship between the Excelsior management group and the Excelsior equity fund. This settlement was partially memorialized in the stipulated trial court's order dismissing the case, which says:

> For valuable consideration, the receipt of which is hereby acknowledged, Schroeder, through his attorney, knowingly waives his right, pursuant to RCW 61.24.030(2) to judicial foreclosure on the subject property on the grounds it is used for agricultural purposes.
>
> . . . .
>
> 1. Schroeder has knowingly waived any and all right he may have to judicial foreclosure of the subject property on the grounds it is used for agricultural purposes,
>
> 2. Schroeder shall not be allowed to again allege that the subject property is used for agricultural purposes,
>
> 3. Any future deed of trust executed by Schroeder to the defendant, an associated company or assigns, need not be judicially foreclosed but may be foreclosed nonjudicially in accordance with RCW Chapter 61.24.

ECP at 36.

¶7 Schroeder testified he understood he had a year's forbearance before any payments would be due. Instead, the note he signed had monthly payments from the beginning and was due in full in a year. Schroeder also testified that he did not understand that he agreed that his farm was not

agricultural, both for purposes of settlement and in the deed of trust.[2]

¶8 In November 2009, Haberthur, as the successor trustee, began nonjudicial foreclosure proceedings. Haberthur described himself in a sworn declaration as "one of the attorneys" for both the Excelsior management group and the Excelsior equity fund. ECP at 123. The nonjudicial foreclosure sale was initially set for February 19, 2010. The record suggests that Schroeder had difficulty finding counsel to represent him. He did not retain his new attorney, Matthew Pfefer, until early 2010. On February 8, mere days after being hired, Pfefer served the trustee with a summons and complaint seeking to block the sale on several grounds, including the assertion that the land was agricultural. Pfefer set the hearing to enjoin the sale for February 16, 2010, which gave the trustee the five days' notice required by RCW 61.24.130(2). Haberthur responded by e-mailing Pfefer a copy of the 2009 stipulation and order of dismissal, characterizing it as forbidding Schroeder from raising the agricultural character of his property. Based on that order, Haberthur asked Pfefer to dismiss his complaint with prejudice and informed him Haberthur would be seeking his attorney fees for having to appear. Pfefer asked Haberthur to delay the sale and give him more time to investigate. According to Pfefer's declaration, Haberthur declined to postpone the foreclosure sale, "insisting that he would not subject his client to a fishing expedition by the Plaintiff." Haberthur Clerk's Papers (HCP) at 87.[3] Pfefer struck the

---

[2] Schroeder expressed shock at his deposition, saying, "I only owed 140,000 in 2007, and here it is 2010 and I got a bill of 435,000. Something's wrong." ECP at 148. Stating that he did not read or write well and relied upon his attorney's explanation, Schroeder testified he had not read the documents associated with the settlement and the new loan.

[3] The issue has not been briefed. It is not before us, and we do not mean to imply any finding of improper action by the trustee. However, we are uncomfortable reciting these facts without making an observation concerning the multiple roles played by Haberthur lest we seem to be tacitly approving of an attorney for a party acting as the trustee. The deed of trust act does not specifically permit or prohibit an attorney for a party acting as a trustee but imposes a duty of good faith on the

February 16 hearing, blaming what he later described as "the Trustee's intransigence." HCP at 59, 87.

¶9 Late on February 15, with the February 19 sale date looming ever closer, Pfefer filed a new complaint for damages and injunctive relief under the Washington Mortgage Broker Practices Act (ch. 19.146 RCW), the Consumer Protection Act (CPA) (ch. 19.86 RCW), and the Real Estate Settlement Practices Act (12 U.S.C. § 2601), and claimed unconscionability and civil conspiracy. ECP at 248-51. Among other things, Pfefer argued that Excelsior and its associated companies had "predatory lending practices"; that they had offered Schroeder a loan on favorable terms and then switched it out for a far less favorable one; that they had offered Schroeder a loan that had no payments for 12 months and changed it to one that became due in full in 12 months; that they had stripped Schroeder's equity by driving up their fees and expenses; that they had "surprise[d]" Schroeder by inserting a security interest in the timber on Schroeder's land into the deed of trust, preventing him from being able to harvest it and make payments on the note; and that they had failed to inquire into Schroeder's ability to pay before making the loan. ECP at 239-44. Pfefer e-mailed Haberthur a motion for an ex parte temporary restraining order. Pfefer also moved to set aside Schroeder's 2009 stipulation and order and order of dis-

---

trustee that may, at least in contested foreclosure actions, be difficult for a party's attorney to execute. RCW 61.24.010(4). We note the act specifically states that the trustee "shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." RCW 61.24.010(3). However, we also note this court has stated that to prevent property from being wrongfully appropriated though nonjudicial means and to avoid constitutional and equitable concerns, at a minimum, a foreclosure trustee must be independent and "owes a duty to act in good faith to exercise a fiduciary duty to act impartially to fairly respect the interests of both the lender and debtor." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 790, 295 P.3d 1179 (2013). "The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence." RPC 1.8 cmt. 17. "[A]ttorneys owe an undivided duty of loyalty to the client." *Mazon v. Krafchick*, 158 Wn.2d 440, 448-49, 144 P.3d 1168 (2006). At the very least, on review, it makes it difficult to determine which of Haberthur's acts were made in his capacity as trustee and which as counsel for the beneficiary. Thus, we often simply say "Haberthur" instead of trustee or counsel.

missal, stating the property was not agricultural and that the deed of trust act did not allow the parties to agree to waive RCW 61.24.030, that his attorney was without authority to make that stipulation, and that enforcing the stipulation would violate his free speech rights.

¶10 The judge initially granted the temporary restraining order. A few days later, Haberthur moved to dissolve the temporary restraining order on the ground that Schroeder had not given the trustee the requisite five days' notice of the hearing and because the late notice was unfair to the trustee. The trial judge granted the motion. The nonjudicial foreclosure sale proceeded, and Haberthur executed a trustee's deed conveying the Schroeder property to his client, Excelsior Mortgage Equity Fund II LLC.

¶11 Around this time, the defendants moved for summary judgment dismissing the case. The motion is not in the record, but the responsive documents suggest the defendants argued that the 2009 dismissal order prevented Schroeder from asserting the agricultural character of his farm, that the failure to give five days' notice of the hearing was fatal, and that the completed foreclosure sale mooted Schroeder's claims. Signing an order drafted by counsel/trustee Haberthur, the trial judge granted summary judgment and dismissed all of Schroeder's claims. The Court of Appeals affirmed. We granted review and reverse.

## ANALYSIS

¶12 Among other things, Schroeder assigned error to the trial judge's refusal to partially vacate the order dismissing the first foreclosure case, his decision to dissolve the temporary restraining order, and his grant of summary judgment to the defendants. We review a trial court's ruling on whether to vacate a final judgment for abuse of discretion. *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978) (citing *Martin v. Pickering*, 85 Wn.2d 241, 533 P.2d 380 (1975)). We have not previously had an occasion to

decide the standard of review of an order dissolving a temporary restraining order, but we note that most courts review them for abuse of discretion. *See, e.g.*, *In re Marriage of Skelton*, 352 Ill. App. 3d 348, 350, 815 N.E.2d 1176, 287 Ill. Dec. 373 (2004) (citing *C.D. Peters Constr. Co. v. Tri-City Reg'l Port Dist.*, 281 Ill. App. 3d 41, 46-47, 666 N.E.2d 44, 216 Ill. Dec. 876 (1996)); *Upland Police Officers Ass'n v. City of Upland*, 111 Cal. App. 4th 1294, 1300, 4 Cal. Rptr. 3d 629 (2003) (citing *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1109, 929 P.2d 596, 60 Cal. Rptr. 2d 277 (1997)). For the purposes of this case, we will follow their lead.[4] We review questions of law and summary judgment rulings de novo, taking all the inferences in favor of the nonmoving party. *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)); *Hauber v. Yakima County*, 147 Wn.2d 655, 659, 56 P.3d 559 (2002) (citing *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998)). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Herring v. Texaco, Inc.*, 161 Wn.2d 189, 194, 165 P.3d 4 (2007) (citing *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998)).

■ ■ ¶13 "Washington's deed of trust act should be construed to further three basic objectives." *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985) (citing Joseph L. Hoffmann, Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*, 59 WASH. L. REV. 323, 330 (1984)). "First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles." *Id.* (citing *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 491 P.2d 1058 (1971)). We recently reaf-

---

[4] We do not mean to discourage parties from raising and properly briefing the standard of review for dissolving a temporary restraining order in the future.

firmed that the deed of trust act "must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales." *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007) (citing *Queen City Sav. & Loan Ass'n v. Mannhalt*, 111 Wn.2d 503, 514, 760 P.2d 350 (1988) (Dore, J., dissenting)).

AGRICULTURAL LAND AND THE DEED OF TRUST ACT

A. Plain Language

■■ ¶14 Washington State's deed of trust act permits trustees to foreclose on some, but not all, deeds of trust without judicial supervision. Among other things, the act provides additional protection for land that is primarily used for agricultural purposes:

It shall be requisite to a trustee's sale:

. . . .

(2) That the deed of trust contains a statement that the real property conveyed is not used principally for agricultural purposes; provided, if the statement is false on the date the deed of trust was granted or amended to include that statement, and false on the date of the trustee's sale, then the deed of trust must be foreclosed judicially.

RCW 61.24.030.

¶15 The statutory language is quite plain on its face. "It shall be requisite to a trustee's sale" that if the land is used principally for agricultural purposes on both the day the deed is granted or amended and the day of the trustee's sale, "the deed of trust must be foreclosed judicially." *Id.* The deed of trust at issue here, at page 9 of a 24-page document, stated the land was not used principally for agricultural purposes. But the record strongly suggests, and for purposes of review we will assume, the statement was false on the day the deed was granted and false on the day of the

trustee sale.[5] Accordingly, one of the requisites for a trustee's sale was not met. "As we have already mentioned and held, under this statute, strict compliance is required." *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 568, 276 P.3d 1277 (2012) (citing *Udall*, 159 Wn.2d at 915-16).

B. Waiver

¶16 Haberthur and Excelsior do not dispute that the statute is plain on its face or that it makes it a requisite for the trustee's sale that the land not be used principally for agriculture. Instead, they argue that Schroeder waived the right to raise this argument by signing a deed that stated that "[t]he Property has not been used, and will not be used, for agricultural purposes," ECP at 182, and by settling the first lawsuit in part by "knowingly waiv[ing] any and all right he may have to judicial foreclosure of the subject property on the grounds it is used for agricultural purposes," ECP at 36. Most rights can be waived by contract or conduct. *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). "The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right."[6] *Id.*

¶17 The difficulty with the defendants' waiver argument is that RCW 61.24.030 is not a rights-or-privileges-creating statute. Instead, it sets up a list of "requisite[s] to a trustee's sale." Among other things, it is a requisite to a trustee's sale that the deed contain the power of sale, .030(1); that the

---

[5] We note that Excelsior and Haberthur have not contested the assertion that the land was agricultural or averred that they were unaware of that fact at the critical times.

[6] Schroeder has framed his argument as whether the statute is "immune to waiver" and whether the trustee's sale of the property is ultra vires. Pet. for Review (Excelsior) at 8, 13. Substantively, though, he is essentially claiming that under the plain language of the statute, the land was not subject to nonjudicial foreclosure.

property not be used primarily for agricultural purposes, .030(2); that a default has occurred, .030(3); that there is no other pending action by the beneficiary to seek satisfaction of the obligation, .030(4); that the deed has been recorded in the relevant counties, .030(5); that the trustee maintain an address for service of process, .030(6); that the trustee have proof that the beneficiary is the owner of the obligation secured by the deed of trust, .030(7); and that the beneficiary has given written notice of the default to the debtor containing specific statutory language advising the debtors of their rights, .030(8). These are not, properly speaking, rights held by the debtor; instead, they are limits on the trustee's power to foreclose without judicial supervision.

¶18 This is not the first time we have confronted the argument that statutory requirements of the deed of trust act may be waived contractually. In *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d 83, 108, 285 P.3d 34 (2012), we held the statutory requirement that the beneficiary hold the note or other instrument of indebtedness could not be waived. In *Bain*, we followed the reasoning of other cases in which we have held other statutory requirements could not be contractually waived. *Id.* at 107-08 (citing *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 16 P.3d 617 (2001); *Nat'l Union Ins. Co. of Pittsburgh v. Puget Sound Power & Light*, 94 Wn. App. 163, 177, 972 P.2d 481 (1999); *State ex rel. Standard Optical Co. v. Superior Court*, 17 Wn.2d 323, 329, 135 P.2d 839 (1943)). As we said in *Bain*, "The legislature has set forth in great detail how nonjudicial foreclosures may proceed. We find no indication the legislature intended to allow the parties to vary these procedures by contract. We will not allow waiver of statutory protections lightly." *Id.* at 108.[7]

---

[7] There may be technical procedural details that the parties may, by agreement, modify or waive, but strict compliance with mandated requisites is required.

## C. Other Equitable Doctrines

■■■ ¶19 In the alternative, Excelsior and Haberthur argue that Schroeder is barred from raising RCW 61.24-.030(2) on the grounds of res judicata, collateral estoppel, and equitable estoppel. "In Washington res judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." *Mellor v. Chamberlin*, 100 Wn.2d 643, 645-46, 673 P.2d 610 (1983) (citing *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 588 P.2d 725 (1978)). These elements have not been met. The subject matter of the 2009 litigation was the 2007 deed of trust. The subject matter of the 2010 litigation was the foreclosure of the 2009 deed of trust. Further, under our plain reading of the statute, it is questionable whether the trial court had authority to enter an order declaring whether the land would be used for agricultural purposes at the time of a future sale.

■■■ ¶20 Collateral estoppel requires

"(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

*Hadley v. Maxwell*, 144 Wn.2d 306, 311-12, 27 P.3d 600 (2001) (internal quotation marks omitted) (quoting *Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 113 Wn.2d 413, 418, 780 P.2d 1282 (1989)). Unfortunately, the defendants do not analyze these elements, and we decline to reach the issue. We note in passing that the issues in the two cases do not appear to be identical.

■■■ ■■■ ¶21 Equitable estoppel requires proof of "(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, state-

ment, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act." *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998) (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994)). The second element is not met on the record before us. We have already held the agricultural land condition cannot be waived, and the record strongly suggests that the Excelsior group was aware of the agricultural character of the property at the time of the first settlement. Therefore, any reliance would not have been reasonable. Schroeder's first attorney attempted to stop the 2009 nonjudicial foreclosure by establishing that the land was agricultural. He alleged in his complaint against Excelsior and the original trustee that "[t]he real property above described and secured by the subject deed of trust is agricultural property. It was agricultural property when the deed of trust was executed and will still be agricultural property [on the date of the trustee's sale]." ECP at 4. Attached to the complaint were supporting photographs and tax documents. We need not reach the third element, as equitable estoppel cannot be established on this record.

¶22 Excelsior makes a public policy argument that by signing a deed with a statement warranting the property was not agricultural, Schroeder has perpetrated a "fraud on both Excelsior and the Court." Suppl. Br. of Resp'ts (Excelsior) at 10.[8] This is a remarkable statement since Excelsior prepared the documents to be signed and if the land was in

---

[8] Fraud has not been formally alleged in this case, though Haberthur uses the term regularly in his briefing to this court. Suppl. Br. of Resp'ts (Excelsior) at 1, 2, 9, 10, 12, 13, 15 ("fraudulently"). Certainly, in a case of, as Haberthur suggested, "unscrupulous borrowers . . . temporarily hiding cattle," *id.* at 11, law and equity might require a remedy. But it is highly unlikely that remedy would be nonjudicial foreclosure, as it is difficult to imagine a case where unscrupulously hidden cattle would *not* be a matter for a trier of fact. Further, Excelsior's statement that "there are no allegations that Excelsior was privy to any such trickery or was attempting to undermine the statute," *id.*, lacks credibility because that appears to be exactly what Schroeder is alleging.

fact agricultural, Excelsior had adequate notice and there-
fore was complicit in any fraud.[9] We do not find the public
policy argument helpful.

### FAILURE TO RESTRAIN THE SALE

 ¶23 The respondents contend that because
Schroeder failed to bring a timely action to restrain the
sale, his claims must be dismissed. Suppl. Br. of Resp'ts
(Excelsior) at 3, 14. The deed of trust act provides:

> (1) Nothing contained in this chapter shall prejudice the right
> of the borrower, grantor, any guarantor, or any person who has
> an interest in, lien, or claim of lien against the property or some
> part thereof, to restrain, on any proper legal or equitable
> ground, a trustee's sale. The court shall require as a condition
> of granting the restraining order or injunction that the appli-
> cant pay to the clerk of the court the sums that would be due on
> the obligation secured by the deed of trust if the deed of trust
> was not being foreclosed:
>
> . . . .
>
> (2) No court may grant a restraining order or injunction to
> restrain a trustee's sale unless the person seeking the restraint
> gives five days notice to the trustee of the time when, place
> where, and the judge before whom the application for the
> restraining order or injunction is to be made.

RCW 61.24.130.[10] "The failure to take advantage of the
presale remedies under the deed of trust act may result in
waiver of the right to object to the sale." *Plein v. Lackey*, 149
Wn.2d 214, 227, 67 P.3d 1061 (2003). The respondents
contend that under *Plein*, Schroeder's "appeal was rendered
moot when [he] failed to challenge the sale by availing

---

[9] Schroeder could have warranted his property had lemonade springs, chocolate
lakes, and a house made of gingerbread; if the lender had reason to believe these
warrants untrue, it could not rely on such a warrant and it would not be fraud.

[10] Schroeder has not paid the amounts owing into the court registry. The parties
allude to this in their briefs, but it is not clear whether, given that the temporary
restraining order was dissolved and the sale went forward, it is germane.

himself of presale remedies." Suppl. Br. of Resp'ts (Excelsior) at 14.

¶24 In *Plein*, a corporation purchased a piece of property secured by a deed of trust. The property was used to secure multiple loans, including loans from corporate officers. Later, the corporation fell into strife. One corporate officer and junior lienholder, Cameron, paid the obligation owed to the senior lienholder in return for being assigned the beneficial interest in that senior deed of trust. *Plein*, 149 Wn.2d at 219. Cameron then brought a nonjudicial foreclosure action. Plein sought a permanent injunction barring the trustee's sale on the theory that since the debt on the senior lien had been extinguished, Cameron did not hold an instrument that allowed foreclosure. *Id.* at 220.[11] Unfortunately for Plein, "[s]imply bringing an action to obtain a permanent injunction will not forestall a trustee's sale that occurs before the end of the action is reached." *Id.* at 227 (citing Hoffmann, *supra*, at 334). For whatever reason, Plein did not seek to temporarily restrain the trustee's sale and the sale proceeded as scheduled. *Id.* at 220. We found that failure to restrain the sale waived his challenge. *Id.* at 229 ("Plein received notice of his right to enjoin the sale, had knowledge of his asserted defense before the sale . . . , and failed to obtain a preliminary injunction or other order restraining the sale.").

¶25 Based on *Plein*, the defendants argue that Schroeder failed to give the statutory five-day notice required by RCW 61.24.130(2) and failed to successfully enjoin the sale, and thereby waived his right to contest the sale. We emphasize the obvious. If Schroeder's land was agricultural, then not only did the trustee not have authority to proceed with an nonjudicial foreclosure, but the very statute upon which the trustee relies to support its five-day notice requirement, RCW 61.24.130(2), is inapplicable.

¶26 We conclude that the respondents' reliance on *Plein* is misplaced. It is well settled that the trustee in foreclosure

---

[11] This summary is a gross oversimplification of the complex facts in *Plein*.

must strictly comply with the statutory requirements. *Albice*, 174 Wn.2d at 568 (citing *Udall*, 159 Wn.2d at 915-16). A trustee in a nonjudicial foreclosure may not exceed the authority vested by that statute. *Id.* As we have recently held, the borrower may not grant a trustee powers the trustee does not have by contracting around provisions in the deed of trust statute. *Bain*, 175 Wn.2d at 100.

¶27 Further, in *Plein* the primary issue was whether Cameron, who had paid off a debt secured by a deed of trust on a piece of property, could proceed with a foreclosure under that deed of trust since the underlying debt had been paid. *Plein*, 149 Wn.2d at 225. We found that Cameron had become an accommodation party entitled to invoke the rights secured by the deed of trust. *Id.* While we disposed of the case on its merits, we also considered the alternate grounds pleaded by the trustee to uphold the sale: that the challenger had waived his challenge by not seeking a temporary injunction blocking the sale. *Id.* Under the facts of that case, we concluded he had. *Id.* at 229. Nothing in *Plein* suggests that waiver might cause the deed of trust act to apply to transactions to which the deed of trust act does not apply. If Schroeder's 200 acres were used primarily for agricultural purposes, *Plein* is inapplicable.

¶28 Again, the simple fact is that if Schroeder's property was primarily agricultural, then the trustee lacked the statutory power to foreclose nonjudicially. RCW 61.24.020, .030(2). Schroeder could not vest the trustee with authority the statute did not, nor could the trial court. RCW 61.24.020, .030.[12]

¶29 The procedural posture of this case is somewhat convoluted, but a review of the record reveals

---

[12] In April 2009, the trial judge entered a "stipulated motion and order of dismissal of prejudice" of the previous litigation. ECP at 35. That order contained a stipulation from Schroeder that he would not allege that the property was agricultural and that he waived any rights that might accrue from the agricultural nature of the property. *Id.* In February 2010, Schroeder moved to vacate his stipulation. ECP at 38-39, 239. While the record is not clear, it appears the trial court declined to vacate the stipulation.

that Schroeder, through his counsel Pfefer, alerted both the trustee and the court that the land was agricultural prior to the sale. The record suggests that the trial judge believed, mistakenly, that the character of the property was a fact that could be waived and that the time limits in RCW 61.24.130(2) applied. We are loath to reverse a trial court's exercise of discretion but will if the discretion was exercised on untenable grounds or untenable reasons, such as a misunderstanding of the meaning of a statute, as happened here. *State v. Downing*, 151 Wn.2d 265, 272-73, 87 P.3d 1169 (2004) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Schroeder adequately raised the issue of whether his 200 acres was primarily agricultural in nature, and at the very least, the trial court was required to make specific factual findings on whether in fact the land was agricultural as meant by the deed of trust act.[13] We vacate the trial court's order dissolving the temporary injunction.

## CLAIMS FOR DAMAGES

¶30 Schroeder brought a complaint for damages and injunctive relief under the Washington Mortgage Broker Practices Act, the CPA, and the Real Estate Settlement Practices Act and claimed unconscionability and civil conspiracy.[14] Again, the respondents appear to claim Schroeder's failure to successfully avail himself of presale remedies extinguish or render moot all his claims for damages. We

---

[13] We note that the parties disagree whether a hearing under RCW 61.24.130 is the only way to seek an order restraining a nonjudicial foreclosure sale. Given our disposition, we need not resolve their specific contentions, but we note that an action to challenge a foreclosure sale may sound in equity and superior courts have original, concurrent jurisdiction over all cases in equity. *See* WASH. CONST. art. IV, § 6; 15 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 44:6, at 239 (2009).

[14] While the damages claims were raised only indirectly to this court, we find they must be addressed for a full and fair disposition of the case. While the complaint provided no citation, we assume without deciding that the claims under the Real Estate Settlement Practices Act were brought under 12 U.S.C. §§ 2601-2617.

find no support in the law for the idea that the failure to enjoin a sale somehow extinguishes other claims, causes of actions, or remedies available to parties to a real estate transaction or deed of trust. As we noted recently, "waiver applies only to actions to vacate the sale and not to damages actions." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 796, 295 P.3d 1179 (2013). Schroeder's claims for damages, including his claims of violations of Washington's CPA, were dismissed on a motion for summary judgment. We review summary judgments de novo. To prevail on a CPA action, the plaintiff must show an "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). In *Bain*, in answering a certified question, we held the act of a party that does not hold the note or other instrument of indebtedness as a beneficiary in a nonjudicial foreclosure " 'when it knows or should know that under Washington law it must hold the note to be the beneficiary' " has the capacity to be a deceptive act under the CPA. *Bain*, 175 Wn.2d at 116 (quoting Br. of Amicus Att'y General). Similarly, the act of a loan servicer or other beneficiary to proceed with a nonjudicial foreclosure on land it knows or should know to be agricultural land in clear violation of the statute has the capacity to be unfair or deceptive. However, it remains for Schroeder to prove that this was actually unfair or deceptive under the facts of this case. The other elements of a CPA action must also be proved by Schroeder. It was error to dismiss Schroeder's CPA claim on summary judgment.

¶31 Schroeder moved to continue the summary judgment motion to allow him time for further discovery. He was entitled to the continuance to allow adequate time to develop his other claims. It was error for the trial court to deny Schroeder's motion for a continuance and to dismiss Schroeder's other claims for damages on summary judgment

at that stage of the proceedings.[15] Denial of Schroeder's motion to vacate portions of the prior order of dismissal purporting to prevent the raising of the issue of whether the land was used principally for agricultural purposes in future nonjudicial foreclosures was also premature.

## CONCLUSION

¶32 Under Washington's deed of trust act, agricultural land may be foreclosed only judicially. This requirement of the act may not be waived by the parties, and agricultural land may not be foreclosed nonjudicially. If the property in question was primarily agricultural at relevant times, then the property must be foreclosed judicially and statutory provisions relating to enjoining a nonjudicial foreclosure sale are inapplicable. We reverse the courts below and remand for further proceedings consistent with this opinion. Among other things, Schroeder's claims for damages must be reinstated and the trial court must hold a hearing to determine whether the property was primarily agricultural at relevant times; if it was, the nonjudicial foreclosure sale shall be vacated.

MADSEN, C.J., and C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.

After modification, further reconsideration denied May 7, 2013.

---

[15] Excelsior and Haberthur have moved for prevailing party attorney fees under the promissory note and the deed of trust. The motion is denied with leave to renew to the trial court upon resolution of the outstanding issues.